UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION (at Covington)

| | |
|---|---|
| IN RE: DARVOCET, DARVON, AND PROPOXYPHENE PRODUCTS LIABILITY LITIGATION | Master File No. 2: 11-md-2226-DCR<br>MDL Docket No. 2226<br><br>THIS FILING RELATES TO:<br>*Hallaway v. Eli Lilly and Company, et al.*,<br>2:11-cv-00195-DCR |

## MEMORANDUM IN SUPPORT OF DEFENDANT ELI LILLY AND COMPANY'S MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM PURSUANT TO FED. R. CIV. P. 12(b)(6)

Pursuant to Fed. R. Civ. P. 12(b)(6), Defendant Eli Lilly and Company ("Lilly) files this Memorandum in support of its Motion to Dismiss the claims asserted by Plaintiffs Kay Hallaway and Jerry Hallaway ("Plaintiffs"), stemming from Plaintiff Kay Hallaway's alleged ingestion of Darvocet® ("Darvocet") and/or generic propoxyphene.

### PRELIMINARY STATEMENT

Plaintiffs filed this product liability action on July 1, 2011, asserting nine causes of action related to injuries Plaintiff Kay Hallaway allegedly suffered after using Darvocet and/or generic propoxyphene.[1] (Compl.) Plaintiffs allege that "[a]s a result of using Defendants' drug DARVOCET, Plaintiff KAY HALLAWAY was caused to suffer cardiovascular injuries and cardiac arrhythmias, including but not limited to, atrial fibrillation." (Compl. ¶ 17.) Judicially-noticeable documents and Plaintiffs' own Complaint state that on November 19, 2010, FDA

---

[1] Propoxyphene was indicated for use to treat mild or moderate pain. There were numerous formulations of propoxyphene, including propoxyphene hydrochloride, propoxyphene hydrochloride with acetaminophen, propoxyphene napsylate, and propoxyphene napsylate with acetaminophen, to name a few. **Ex. B**, excerpts of Orange Book. Additionally, there were differing strengths of each formulation on the market. *Id.* Propoxyphene products were sold under brand names, *e.g.* Darvon and Darvocet, as well as under numerous generic names.

1

announced the voluntary withdrawal of propoxyphene-containing medicines from the U.S. market as a result of propoxyphene's alleged association with "changes to the electrical activity of the heart." (Compl. ¶ 59, and *infra*).[2] However, judicially-noticeable documents also demonstrate FDA's conclusion that these alleged changes are "not cumulative," and that "[o]nce patients stop taking propoxyphene, [any] risk will go away." In early 2002, Lilly divested Darvocet in the United States, including the regulatory responsibility for updating label warnings, to an unrelated third party. Lilly has not been authorized by FDA to market Darvocet in the U.S. since that time. Because the alleged propoxyphene-related effects are not cumulative, and because Lilly has not marketed the product at issue, Darvocet, in the United States since early 2002,[3] Lilly cannot be liable for Plaintiffs' alleged injuries.

Plaintiffs allege that Kay Hallaway ingested "Darvocet," but they are suing generic manufacturers of propoxyphene products as well. It is therefore clear from the Complaint that the Plaintiffs do not know whether Plaintiff Kay Hallaway ingested the name brand product (Darvocet), which Lilly divested in 2002, or a generic product marketed and sold by any number of companies but never Lilly, including defendants Vintage Pharmaceuticals, Inc. ("Vintage"), Qualitest Pharmaceuticals ("Qualitest"), and Endo Pharmaceuticals, Inc. ("Endo"). Without identifying the entity that marketed or sold the product that allegedly caused Plaintiffs' injuries, the Complaint fails to state a cause of action against any of the Defendants.

Plaintiffs have alleged identical claims, set forth in nine counts, against five different defendants (Lilly, Xanodyne, Vintage, Qualitest, and Endo). Plaintiffs admit that Xanodyne is the "holder of the approved New Drug Application ("NDA") for Darvocet" and that Xanodyne

---

[2] Lilly does not admit that propoxyphene or any propoxyphene-containing product causes, in whole or in part, the alleged effects.

[3] In addition to Darvocet, Lilly divested all of the propoxyphene products at issue.

2

obtained these rights "from aaiPharma Services in or around May 2005." (Compl. ¶¶ 29, 34.) Extraordinarily, while conceding that Xanodyne is the holder of the NDAs for Darvocet, Plaintiffs also sue Lilly, despite the fact Plaintiffs admit that "AAIPHARMA SERVICES[] obtained the rights to the approved New Drug Application for Darvocet from Defendant Eli Lilly and Company in or around February 2002." (Compl. ¶ 28.) Throughout the Complaint, Plaintiffs lump together all Defendants and collectively levy legal conclusions without factual support for the elements of their claims. (*See* Compl. ¶ 6.)

Lilly could not have been responsible for Plaintiff Kay Hallaway's alleged injuries because in 2002, Lilly divested Darvocet (propoxyphene with acetaminophen), including the responsibility for updating the product labeling, to aaiPharma, which thereafter sold the product line to Xanodyne in 2005. As set forth more fully below, judicially-noticeable facts – as well as Plaintiffs' own admissions – establish that Plaintiffs cannot state a viable claim against Lilly. Further, Plaintiffs have failed to satisfy the basic pleading requirements of Fed. R. Civ. P. 8. Thus, Lilly respectfully asks the Court to grant its motion and dismiss Plaintiffs' claims against Lilly in their entirety, with prejudice, pursuant to Fed. R. Civ. P. 12(b)(6).

## ARGUMENT

**I.  THE COMPLAINT FAILS TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED AGAINST LILLY.**

  **A.  Legal Standard**.

FED. R. CIV. P. 12(b)(6) permits a court to dismiss a claim when the plaintiff "fail[s] to state a claim upon which relief can be granted." Motions to dismiss test the legal sufficiency of a complaint. *See, e.g., In re Bluegrass Mortgage Serv., Inc.*, No. 09-21946, 2010 WL 2368279, at *1 (E.D. Ky. June 11, 2010). A complaint must contain "sufficient factual matter, accepted as true to 'state a claim to relief that is plausible on its face.' A claim has facial plausibility when

the plaintiff pleads factual content that allows the court to draw the reasonable inference that *the defendant* is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (emphasis added)); *see also Wells v. Craig & Landreth Cars, Inc.,* No. 3:10-cv-00376, 2011 WL 1542121, at *1 (W.D. Ky. April 22, 2011). Where the well-pleaded facts do not permit the Court to infer more than the "mere possibility of misconduct," the complaint has alleged – but has not "show[n]" – that the pleader is entitled to relief. *Iqbal*, 129 S. Ct. at 1950 (quoting FED. R. CIV. P. 8(a)(2)); *see also Espinosa v. Louisville Metro Gov't*, No. 10-354-JBC, 2011 WL 2295055, at *1 (E.D. Ky. June 10, 2011).

FED. R. CIV. P. 8(a) requires that the complaint set forth "a short and plain statement of the claim showing that the pleader is entitled to relief" or be subject to dismissal. To comply with Rule 8, the complaint must provide "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555; *see also Ashland, Inc. v. Oppenheimer & Co., Inc.*, --F.3d--, 2011 WL 3181277, at *3 (6th Cir. July 28, 2011). Moreover, the pleading must contain something more than a statement of facts that "merely creates a suspicion [of] a legally cognizable right of action." *Twombly*, 550 U.S. at 555; *see also Hollowell v. Cincinnati Ventilating Co., Inc.*, 711 F. Supp. 2d 751, 765 (E.D. Ky. 2010). As the United States Supreme Court has explained, "[w]ithout some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests." *Twombly*, 550 U.S. at 555 n.3; *see also Donaway v. Rohm and Haas Co.*, No. 3:06-cv-575, 2009 WL 3834046, at *1 (W.D. Ky. Nov. 16, 2009). Accordingly, courts "are not bound to accept as true a legal conclusion couched as a factual allegation," and pleadings that lack a "statement of circumstances, occurrences, and events in support of the claim presented" should be dismissed.

*Twombly*, 550 U.S. 555 n.3; *see also Iqbal*, 129 S.Ct. at 1950 (applying *Twombly* and noting that Rule 8 "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions"); *Buckner v. Kentucky*, No. 3:10-36-DCR, 2011 WL 741446, at *1 (E.D. Ky. Feb. 24, 2011). "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555; *see also New Albany Tractor, Inc. v. Louisville Tractor, Inc.*, --F.3d--, 2011 WL 2448909, at *3 (6th Cir. June 21, 2011).

In this case, Plaintiff's Complaint fails to meet the basic pleading requirements of FED. R. CIV. P. 8(a). Pursuant to FED. R. CIV. P. 12(b)(6), therefore, the Court should find Plaintiff's Complaint legally deficient, and dismiss it accordingly.

    **B.    Judicially Noticeable Documents Establish that Any Risk of Cardiac Arrhythmia Associated with Propoxyphene-Containing Products is Not Cumulative.**

Plaintiffs have certainly not alleged that Plaintiff Kay Hallaway ingested a product manufactured or marketed by Lilly. In fact, Plaintiffs have not even alleged the date of ingestion or the date of injury. However, even if Plaintiffs alleged that Plaintiff Kay Hallaway ingested Darvocet at some point before Lilly's divestiture in 2002, judicially noticeable information, namely the FDA's November 19, 2010 News Release ("FDA News Release") cited to in Plaintiffs' Complaint, (see Compl. ¶ 59), establishes that Plaintiff Kay Hallaway's alleged injuries cannot be related to any ingestion of a propoxyphene product before 2002.

In evaluating a Rule 12(b)(6) motion, this Court may consider the allegations in the Complaint, matters of public record, matters of which a court may take judicial notice, and letters of decisions from governmental agencies. *Woods v. Wells Fargo Financial Bank*, 753 F. Supp. 2d 784, 787-88 (S.D. Ind. 2010) (stating that a court may take judicial notice of matters of public record without converting a motion to dismiss to a summary judgment motion); 5A C.A. Wright & A.R. Miller, *Federal Practice & Procedure*, § 1357, at 299 (1990). The Court may also rely

upon documents added to the record as part of this motion to dismiss, *i.e.,* supporting memoranda and affidavits, to the extent Plaintiffs had notice of the documents and relied upon them in framing the Complaint in this action. *See Woods*, 753 F. Supp. 2d at 788. As such, this Court is permitted to take judicial notice of the FDA News Release, including the truth of its contents, as it qualifies for judicial notice as a public record under Rule 201 of the Federal Rules of Evidence. Additionally, the Plaintiffs relied upon this news release in framing their Complaint, and referenced the News Release in Paragraph 59 of the Complaint.

Plaintiffs cite the FDA News Release to assert that "[o]n November 19, 2010 the FDA announced that Defendant, Xanodyne Pharmaceuticals, Inc., had agreed to halt all U.S. marketing of Darvocet after it was determined that the drugs [sic] benefits were outweighed by the risks associated with its use, *specifically* the potential of the drug to cause serious and potentially fatal heart arrhythmias." (Compl. ¶ 59) (emphasis added). While Lilly does not admit that the use of propoxyphene has any causal connection to "serious and potentially fatal heart arrhythmias," the FDA News Release upon which Plaintiffs rely also states that "long time users of [propoxyphene] need to know that these changes to the heart's electrical activity ***are not cumulative. Once patients stop taking propoxyphene, the risk will go away.***" (*See* **Exh. A**, FDA News Release, Xanodyne Agrees to Withdraw Propoxyphene from the U.S. Market (Nov. 19, 2010)) (emphases added). As such, this Court may take judicial notice of the FDA's finding that the alleged adverse effects are not cumulative.[4]

      C.    **Judicially-Noticeable Facts Confirm that Lilly Did Not Market, Promote, or Distribute Darvocet or any Relevant Propoxyphene Products in the United States After Early 2002.**

---

[4] Furthermore, any claim relating to Plaintiff's use of a Lilly product before the 2002 divestiture would now be time-barred by Indiana's applicable two-year statute of limitations. IND. CODE ANN. § 34-20-3-1.

Courts may evaluate Rule 12(b)(6) motions based upon matters of public record, matters of which a court may take judicial notice, and letters of decisions from governmental agencies. *See Woods*, 753 F. Supp. 2d at 788 (stating that a court may take judicial notice of matters of public record without converting a motion to dismiss into a summary judgment motion). Thus, this Court may properly consider information contained in the APPROVED DRUG PRODUCTS WITH THERAPEUTIC EQUIVALENCE EVALUATIONS – commonly known as the "Orange Book" – and records maintained by the United States Patent and Trademark Office ("USPTO") which establish that Lilly divested Darvocet in early2002.

It is a fundamental principle of Indiana product liability law that a defendant is not liable unless use of its product resulted in the alleged injury. Otherwise, the plaintiff will be unable to establish "causation," an element essential to the plaintiff's case on which the plaintiff bears the burden of proof at trial. *Ford Motor Co. v. Rushford*, 868 N.E.2d 806, 810 (Ind. 2007) (noting that plaintiff must establish proximate causation). In Indiana, product liability law is governed by the Indiana Products Liability Act, I.C. 34-20-1-1, et seq. The statute requires, among other things, that the defendant's product reach the user or consumer without substantial alteration in the condition in which the product is sold by the person sought to be held liable under this article, "and that the product cause physical harm." I.C. 34-20-2-1. Here, Plaintiffs fail to, and cannot, allege this essential element of causation as to Lilly. In fact, Plaintiffs admit they cannot prove that a product marketed, promoted, or distributed by Lilly caused Plaintiffs' alleged injuries. (*See* Compl. ¶¶ 28, 29) (admitting that Lilly divested Darvocet to aaiPharma in early 2002 and that Xanodyne acquired the rights to the NDAs for these products in 2005). After early

2002, Lilly did not have FDA approval to market Darvocet in the United States.[5]  As such, the NDA sponsor, and not Lilly, was responsible for the product label.  Accordingly, the Complaint "fail[s] to state a claim upon which relief can be granted," and this Court should grant Lilly's motion to dismiss pursuant to FED. R. CIV. P. 12(b)(6).[6]

In a similar case, *In re Minn. Breast Implant Litig.*, the court held that 3M could not be held liable for any claims after it divested the product to another company.  36 F. Supp. 2d 863, 872 (D. Minn. 1998).  In addressing plaintiffs' many claims, the court noted that 3M could not be held liable when it did not manufacture the products plaintiffs received and, thus, could not have owed plaintiffs any duty.  *Id.* at 872-73.  More specifically, the court rejected plaintiffs' arguments that 3M was liable for negligent design noting that once 3M sold the business, it no longer had any control over the design.  *Id.* at 873.  Plaintiffs also argued that 3M was liable for failure to warn and breach of warranty.  *Id.* at 874-75.  The court dismissed these claims noting that 3M was not the seller and had no duty to warn.  *Id.*  Plaintiffs further claimed that 3M was liable for negligence per se for violations of the Food, Drug and Cosmetic Act.  *Id.* at 875.  Again, the court noted that 3M could not "be said to have had the power to prevent any alleged violations of the Food, Drug, and Cosmetic Act."  *Id.*  Finally, the court dismissed the fraud claims noting that there was no relationship between 3M and the plaintiffs; additionally, 3M, at the time it was the manufacturer, could not have foreseen that Plaintiffs would be using the product.  *Id.*  In sum, the court dismissed all claims against 3M as it had divested the product line and did not distribute the product received by plaintiffs.  *Id.*

---

[5] Even further, Plaintiff admits that there were several other generic manufacturers that could have marketed and sold the allegedly defective product.  (*See* Compl. ¶¶ 36, 39, 42, 44) (alleging that Defendants Vintage, Qualitest, and Endo marketed and sold propoxyphene napsylate and acetaminophen).

[6] "[A] loss of consortium claim is derivative of the injured spouse's claim.  Thus, if the spouse's cause of action fails, the loss of consortium claim fails with it."  *Palmer v. Gorecki*, 844 N.E.2d 149, 156-57 (Ind. Ct. App. 2006) (internal citations omitted).

### 1.   The FDA Orange Book

Under federal law, no one may market or distribute a drug without authorization from the U.S. Food and Drug Administration ("FDA").  21 U.S.C. § 355(a).  Federal law mandates that FDA publish the Orange Book on a monthly basis to identify which pharmaceutical companies are authorized to market a particular prescription medication in the United States.  21 U.S.C. § 355(j)(7)(A)(ii).[7]  As a result, the Orange Book, including the truth of its contents, qualifies for judicial notice as a public record under Rule 201 of the Federal Rules of Evidence.  *See* FED. R. EVID. 201(b) (stating that a judicially noticeable fact is one that is "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned"); *Plumbers and Pipefitters Local Union v. Zimmer*, 673 F. Supp. 2d 718, 736 n.18 (S.D. Ind. 2009) (taking judicial notice of FDA publically available documents).[8]

Accordingly, Lilly submits for the Court's review as **Exhibits B1 and B2** excerpts from the 23rd-31st Editions of the Orange Book,[9] which conclusively establish that Lilly did not

---

[7] *Bayer Schera Pharma AG v. Sandoz, Inc*., No. 08 Civ. 03710, 2010 WL 3447906, at *2 (S.D.N.Y. Sept. 2, 2010) (explaining that after the FDA approves the NDA, the NDA and its related patents are listed in the "Approved Drug Products [w]ith Therapeutic Equivalence Evaluations, also known as the 'Orange Book'"); *Wyeth v. Sun Pharm. Indus., Ltd.*, No. 09-11726, 2010 WL 746394, at *1 (E.D. Mich. Mar. 2, 2010) (stating that the FDA is required to maintain and update the Orange Book to keep medical professionals and the public apprised of the approved products, including generic products); *SmithKline Beecham Corp. v. Zenith Goldline Pharms., Inc*., No. CIV.A.00-cv-1393, 2000 WL 963165, at *1 n.1 (E.D. Penn. June 28, 2000) (explaining that the Secretary of Health and Human Services maintains a list of each drug that has "been approved for safety and effectiveness" in the publication known as "Orange Book").  The information maintained in the Orange Book is based on the FDA's own records and research.  21 U.S.C. § 355(j)(7)(A); 45 Fed. Reg. 72582 ("All drug products on the List have been fully reviewed and approved for safety and effectiveness by the FDA."); 45 Fed. Reg. 72585 ("In the absence of an official List, pharmacists . . . would be required to make their own evaluations of therapeutic equivalence, usually without the comprehensive information available to the agency.").

[8] *Phillips v. Stryker Corp*., No. 3:09-cv-488, 2010 WL 2270683, at *5 (E.D. Tenn. June 3, 2010) (taking judicial notice of FDA public documents);  *Timmons v. Linvatec Corp.,* 263 F.R.D. 582, 585 (C.D. Cal. 2010) (taking judicial notice of the Orange Book and holding that "judicially-noticeable facts demonstrate that [the pharmaceutical company] did not manufacture or sell [the product] during the relevant time period");  *Combs v. Stryker Corp*., No. 2:09-cv-02018, 2009 WL 4929110, at *2 (E.D. Cal. Dec. 14, 2009) (same);  *Horne v. Novartis Pharms. Corp*., 541 F. Supp. 2d 768, 777 (W.D.N.C. 2008) (stating that a court "may take judicial notice of and consider the public records of the FDA . . . without transforming this motion into a motion for summary judgment").

[9] The Orange Book is published for the preceding period.  For example, the 2011 Orange Book coverers the period from January 1, 2010 to December 31, 2010.

market or distribute Darvocet or any relevant propoxyphene product after early 2002.[10] Instead, from early 2002 until market withdrawal in November 2010, Darvocet, along with the generic propoxyphene products, was marketed and distributed exclusively by companies other than Lilly, including Defendants Xanodyne, Vintage, and Qualitest.[11]

### 2. USPTO Records

Records maintained by the USPTO further demonstrate that Lilly divested Darvocet, as the trademark registration for Darvocet was assigned to aaiPharma on February 2, 2002. (*See* **Exh. C**, USPTO, Trademark Assignment Abstract of Title, Darvocet.) The Court may take judicial notice of these records from the USPTO website.[12]

### D. The Complaint Fails to Satisfy Rule 8 Because It Fails to Differentiate Among the Defendants.

Irrespective of the fact that Plaintiffs cannot state a claim against Lilly due to Lilly's divestiture of Darvocet in 2002, Plaintiffs have failed to separate their allegations amongst the Defendants. To satisfy the notice pleading standard under Rule 8, a complaint must set forth a short and plain statement of the facts upon which the claim is based that is sufficient to give the defendant fair notice of what the plaintiff's claims are and the grounds upon which they rest. *See Rodriguez v. Parsons Infrastructure & Tech. Group, Inc.*, No. 2:08-cv-00273, 2008 WL 4767456, at *2 (S.D. Ind. Oct. 14, 2008); *see also Pietrangelo v. NUI Corp.*, No. Civ. 04-3223,

---

[10] *See* **Exh. B-1**, FDA, APPROVED DRUG PRODUCTS WITH THERAPEUTIC EQUIVALENCE EVALUATIONS, Product Name Sorted by Applicant List (listing all approved Lilly products).

[11] *See* **Exh. B-2**, FDA, APPROVED DRUG PRODUCTS, Prescription Drug Product List (demonstrating that Lilly was not authorized to market and distribute Darvocet or any relevant propoxyphene product in the United States from early 2002-2010).

[12] *See also Kos Pharms., Inc. v. Andrx Corp.*, 369 F.3d 700, 705 n.5 (3d Cir. 2004) (taking judicial notice of the mark registration on the USPTO's website); *United States v. Eagleboy*, 200 F.3d 1137, 1140 (8th Cir. 1999) (district court may take judicial notice of agency documents); *Super-Krete Intern., Inc. v. Sadleir*, 712 F. Supp. 2d 1023, 1029 n.1 (C.D. Cal. 2010) (same); *Roussin v. AARP, Inc.*, 664 F. Supp. 2d 412, 415 (S.D.N.Y. 2009) (stating that a court may take judicial notice of filings with governmental agencies).

2005 WL 1703200, at *10 (D.N.J. July 20, 2005) ("[T]he [c]omplaint fails to satisfy even the liberal notice pleading standard of Rule 8(a) because [p]laintiff fails to differentiate between the defendants. Plaintiffs' complaint instead lumps all of the defendants together and accuses every defendant of breaching all of the asserted fiduciary duties.")[13].

Moreover, *Twombly* requires that the "[f]actual allegations must be enough to raise a right to relief above the speculative level." 550 U.S. at 555. Thus, in addressing a motion to dismiss, courts should consider whether the factual allegations in the complaint are facially plausible. As the Supreme Court elaborated in *Iqbal*, facial plausibility requires plaintiffs to plead *specific* facts implicating each named defendant. *Iqbal,* 129 S. Ct. at 1949 (emphasis added; citations omitted) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that *the defendant* is liable for the misconduct alleged.").

Here, Plaintiffs allege that "Defendants" are liable for the nine counts. Plaintiffs' broad and sweeping allegations are set forth without any factual specificity and are heedlessly asserted against all "Defendants" throughout the entire Complaint. For example, despite the fact they acknowledged Lilly's divestiture in 2002, Plaintiffs generically assert that "Defendants had an obligation to comply with the law in the manufacture, design, and sale of Darvocet." (Compl. ¶ 65). Plaintiffs also generically allege that "said defects in Defendants' drug Darvocet were a substantial factor in causing Plaintiff's injuries." (Compl. ¶ 103). However, previously in the

---

[13] *See also Asad v. Providian Bank, N.A.*, 234 Fed. Appx. 511, 511-12 (9th Cir. 2007) (unpublished) (affirming dismissal of the complaint that failed to "specify which claims were set forth against which defendants"); *Atuahene v. City of Hartford,* 10 Fed. Appx. 33, 34 (2d Cir. 2001) (affirming dismissal because the complaint "lump[ed] all the defendants together in each claim and provid[ed] no factual basis to distinguish their conduct"); *Classen Immunotherapies, Inc. v. Biogen IDEC*, 381 F. Supp. 2d 452, 455 (D. Md. 2005) (dismissing the complaint that "fail[ed] to delineate the particular acts of infringement attributable to each Defendant").

Complaint, Plaintiffs recognized that "Xanodyne Pharmaceuticals, Inc. is the holder of approved [sic] New Drug Application for Darvocet." (Compl. ¶ 34).

Accordingly, Plaintiffs' Complaint neither provides proper notice to Lilly of the claims against it, nor allows the Court to draw the reasonable inference that Lilly is liable for the misconduct alleged – and therefore, Lilly should be dismissed. *Iqbal*, 129 S. Ct. at 1954 ("Rule 8 does not empower [Plaintiff] to plead the bare elements of [her] cause of action, affix the label 'general allegation,' and expect [the] complaint to survive a motion to dismiss.").

Multiple courts have found that conclusory and generic allegations are insufficient under Rule 8 in the context of pharmaceutical litigation. For example, in *Dittman*, the plaintiff alleged that he was injured by the implantation of "a pain pump loaded with anesthetic agents" into his shoulder. *Dittman v. DJO, LLC,* No. 08-CV-02791-WDM-KLM, 2009 WL 3246128, at *1 (D. Colo. Oct. 5, 2009). In his complaint, however, the plaintiff failed to "identify which specific medication was allegedly used during his procedure . . . ." *Id.* Thus, in addition to finding the plaintiff's claims to be time barred, the court determined that the plaintiff had not sufficiently alleged that any of the named defendants' products were actually used in his pain pump. *Id.* at *3 ("Plaintiff has no facts, only speculation, on which to base his claim that defendants' products caused or contributed to his injury."). Because of this "fatal" deficiency, the court dismissed the complaint, holding that the "mere possibility . . . that the medicine used could have been made by these defendants, rather than by any number of other manufacturers of anesthesia drugs, is not adequate to state a claim under the prevailing standards as set forth by *Twombly* and *Iqbal*." *Id.* The court dismissed the plaintiff's claims against AstraZeneca and another anesthetic manufacturer with prejudice without leave to amend. *Id.*

In *Sherman*, another similar case, the complaint contained "generalized descriptions" – *i.e.*, "anesthetics," "anesthetic drugs," and "pain relief drugs" – of the anesthetic administered, and the plaintiff "conspicuously fail[ed]" to allege that AstraZeneca was responsible for the pain medication at issue. *Sherman v. Stryker Corp.*, No. SACV 09-224 JVS, 2009 WL 2241664, at *4-5 (C.D. Cal. Mar. 30, 2009). Based upon the plaintiff's vague allegations, the court dismissed the complaint with prejudice as to AstraZeneca and another anesthetic manufacturer, holding that there were "not even enough facts for a reasonable inference of liability," since the complaint alleged several different types or brands of medication that *might* have been used and contained no allegation that AstraZeneca was responsible for the medication *actually* used. *Id.* at *5.[14]

In Plaintiffs' Complaint, the allegations against Lilly are even more speculative than the allegations in *Dittman* and *Sherman*. In *Dittman* and *Sherman*, the complaints wholly failed to identify the product that caused the plaintiffs' injuries or which named defendant, if any, was responsible for that product. In this case, Plaintiffs actually admit that Lilly divested Darvocet to an unrelated third party. Accordingly, Plaintiffs' claims against Lilly should be dismissed in their entirety.

---

[14] *See also Daughtery v. I-Flow, Inc. et al.*, No. 3:09-cv-2120-P, 2010 WL 2034835, at *3 (N.D. Tex. April 29, 2010) (granting defendants' motions to dismiss because "[plaintiff] has not set forth allegations sufficient or specific enough to plead the existence of a causal connection between his injury and the conduct of any particular defendant(s)"); *Peterson v. Breg, Inc.*, No. 2:09-cv-2044-JWS, 2010 WL 2044248, at *2 (D. Ariz. April 29, 2010) (same); *Adams v. I-Flow Corp.*, No. CV09-09550 R(SSx), 2010 WL 1339948, at *3 (C.D. Cal. March 30, 2010) (granting defendants' motions to dismiss for each plaintiff's failure to allege the identity of the particular defendant responsible for the specific product administered to him); *Haskins v. Zimmer Holdings Inc.*, No. 1:09-cv-236, 2010 WL 342552, at *2 (D. Vt. Jan. 29, 2010) (granting defendant's motion to dismiss and stating that "Plaintiffs must at least allege in their complaint that [the defendant's] product was administered to [plaintiff] . . . This threshold allegation is necessary to show a plausible entitlement to relief"); *Gilmore v. DJO, Inc.*, 663 F. Supp. 2d 856, 862 (D. Ariz. 2009) (granting defendant's motion to dismiss because the plaintiffs had "done little more than allege that [the defendants] caused them harm" and "that is not sufficient to withstand a motion to dismiss").

## II. PLAINTIFFS HAVE FAILED TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED FOR FRAUD.

Plaintiffs' claim for Fraud against "Defendants" is set forth in paragraphs 131-156, and 165-199 of the Complaint. Throughout the fraud allegations, Plaintiffs do not mention Lilly and most certainly do not allege the dates the allegedly fraudulent activity occurred, *e.g.* "[a]t the time the Plaintiff used Darvocet, the Plaintiff was unaware of the falsity of said representation and reasonably believed them to be true." (Compl. ¶ 136). Additionally, despite Lilly's divestiture, Plaintiffs claim that "Defendants were under a duty to disclose to Plaintiff, and her physicians, hospitals, healthcare providers, and/or the FDA the defective nature of Darvocet, including but not limited to the heightened risks of an adverse cardiovascular events, such as heart arrhythmia, myocardial infarction or sudden death." (Compl. ¶ 149). These types of blanket allegations are not sufficient. Nowhere do Plaintiffs even attempt to distinguish the alleged conduct of each named Defendant, let alone identify any specifics of the unidentified allegedly fraudulent activities.

FED. R. CIV. P. 9(b) requires that a party alleging fraud "must state with particularity, the circumstances constituting fraud." "'Particularity' requires plaintiffs to plead the who, what, when, where, and how of the alleged fraud." *Sheridan Health Care Ctr. v. Centennial Healthcare Corp.*, No. IP01-0186, 2001 WL 1029111, at *3 (S.D. Ind. June 19, 2001), citing *Ackerman v. Northwestern Mut. Life Ins. Co.*, 172 F.3d 467, 469 (7th Cir. 1999). "Therefore, a plaintiff claiming fraud . . . must do more pre-complaint investigation to assure that the claim is responsible and supported, rather than defamatory and extortionate." *Winforge, Inc. v. Coachmen Indus. Inc.*, No. 1:06-cv-619, 2007 WL 854025, at *4 (S.D. Ind. March 13, 2007) (J. Barker) (citations and internal quotation marks omitted). Additionally, as this Court has stated, "[u]nder Rule 9(b), a claimant must make specific and separate allegations against each

defendant; '[a] complaint that attributes misrepresentations to all defendants, lumped together for pleading purposes, generally is insufficient.'" *Winforge*, 2007 WL 854025, at *6, quoting *Sears v. Likens*, 912 F.2d 889, 893 (7th Cir. 1990).

Plaintiffs' fraud claims are insufficiently pled. Notably absent from the Plaintiffs' Complaint are any of the particulars required for pleading fraud. Namely, Plaintiffs fail to even identify the persons making the alleged misstatements or when or where the statements occurred. Contrary to this Court's determination in *Winforge*, Plaintiffs lump the claims together generically against all "Defendants" rather than specifically against an individual Defendant. The allegations as pled amount to little more than conclusory statements, unsupported by fact, that are entirely void of the requisite "particularity [of] the circumstances constituting fraud." FED. R. CIV. P. 9(b). In sum, there simply are no factual allegations, nor could there be when Lilly divested Darvocet, specifying the alleged fraudulent activity by Lilly in the pleadings to support a fraud claim against Lilly. Without specific allegations against Lilly, dismissal of the fraud counts in the Complaint is entirely proper.

### III.  PLAINTIFF IS NOT ENTITLED TO CONDUCT DISCOVERY OR PERMITTED LEAVE TO AMEND.

This Court should dismiss the claims against Lilly without further discovery and without leave to amend. The Federal Rules of Civil Procedure mandate an "inquiry reasonable under the circumstances" into the evidentiary support for all factual contentions prior to filing a pleading. FED. R. CIV. P. 11(b). In this case, Plaintiffs acknowledge in the Complaint that Lilly had divested the product at issue, Darvocet, in 2002 to an unrelated company. (Compl. ¶ 28). As demonstrated above, Lilly could not have been the correct Defendant when it divested Darvocet in 2002 and judicially noticeable records establish that any potential effects are not cumulative. As such, any amendment would be futile. *See Rodriguez v. U.S.,* 286 F.3d 972, 980 (7th Cir.

15

2002) (stating that a "court may deny [a motion to amend] due to undue delay, bad faith, dilatory motive, prejudice or *futility*") (emphasis added); *Gen. Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1085 (7th Cir. 1997) (noting that in determining whether an amendment would be futile, the court should deny the motion if the amended complaint would still fail to state a claim).

To be sure, any request for discovery to alter the allegations contained in Plaintiffs' Complaint would run directly afoul of controlling United States Supreme Court precedent. In *Twombly* and *Iqbal*, the Supreme Court made clear that a plaintiff who fails to meet the pleadings requirements of Rule 8(a)(2) at the outset should not be allowed to proceed to the discovery phase of the case in the hope that discovery might provide the evidence needed to support a claim against the defendant. *See Iqbal*, 129 S. Ct. at 1954-55 ("[B]ecause [plaintiff's] complaint is deficient under Rule 8, he is not entitled to discovery, cabined or otherwise."); *Twombly*, 550 U.S. at 559 ("It is no answer to say that a claim just shy of a plausible entitlement to relief can, if groundless, be weeded out early in the discovery process through 'careful case management' . . ."). Plaintiffs have no basis for suing Lilly, and as such, Lilly should not be subjected to costly discovery obligations. *See Sanders v. City of Indianapolis*, No. 1:09-cv-0622, 2010 WL 1410587, at *1 (S.D. Ind. April 2, 2010) (noting that courts often stay discovery while a motion to dismiss is pending and the Supreme Court's "more rigorous pleading standard rested, in part, upon the concern that plaintiffs were subjecting defendants to discovery costs despite having no legally cognizable claims").

In this case, the Court should exercise its broad discretion to dismiss the claims against Lilly without leave to amend. Plaintiffs do not make any specific allegations against Lilly. Plaintiffs admit in the Complaint that Lilly divested Darvocet in 2002. Further, the FDA has

16

determined that the alleged effects of propoxyphene are not cumulative; thus, Lilly cannot be responsible for Plaintiffs' alleged injuries. This disregard for the facts should not be rewarded by allowing Plaintiffs to amend the Complaint or to blindly engage in a fishing expedition to pursue discovery against Lilly. Accordingly, Lilly requests that the Court grant its motion to dismiss, with prejudice.

## CONCLUSION

For the reasons set forth above, Plaintiffs' claims against Lilly do not meet the pleading requirements under the plain language of the Federal Rules of Civil Procedure. Accordingly, Lilly respectfully requests that the Court grant its motion to dismiss for failure to state a claim upon which relief can be granted pursuant to FED. R. CIV. P. 12(b)(6).

Respectfully submitted,

ICE MILLER LLP

*/s/ Mary Nold Larimore*
Mary Nold Larimore
Kimberly C. Metzger
Audra J. Ferguson-Allen
One American Square, Suite 2900
Indianapolis, IN 46282-0200

## CERTIFICATE OF SERVICE

      The undersigned hereby certifies that on the 15th day of September 2011, a copy of the foregoing has been served via the Court's electronic filing system and/or by U.S. First Class Mail on all attorneys appearing on the Court's service list.

                                      /s/ *Mary Nold Larimore*
                                      Mary Nold Larimore

ICE MILLER LLP
One American Square, Suite 2900
Indianapolis, IN 46282-0200
(317) 236-2100

I/2642459.2